UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

GLORIA FELIX as Administrator of the
Estate of MIGDALIA ORTEGA, and GLORIA
FELIX, Individually and on behalf of
all Distributees,

                 Plaintiff,

          -against-

THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE DEPARTMENT, THE FIRE
DEPARTMENT OF NEW YORK, POLICE
OFFICERS "JOHN DOE I-X" (whose names
are fictitious, and identities are
not currently known) and FIRST
RESPONDERS "JOHN DOE I-X" (whose
names are fictitious, and identities
are not currently known),

                 Defendants.

--------------------------------------x

**MEMORANDUM & ORDER**
23-CV-5411 (EK)(VMS)

ERIC KOMITEE, United States District Judge:

       Plaintiff Gloria Felix brings this action as administrator of the estate of her deceased sister, Migdalia Ortega.  Felix alleges that Defendants — the City of New York, the New York Police Department, the Fire Department of New York, and various John Doe officers — failed to provide Ortega with adequate medical care after her boyfriend shot her.  Ortega eventually died at the hospital.

       Felix's amended complaint asserts federal constitutional claims under 42 U.S.C. § 1983 for violations of

the Fourth, Eighth, and Fourteenth Amendments.  It also asserts
state-law claims for negligence and wrongful death.  Defendants
now move to dismiss the federal claims under Federal Rule of
Civil Procedure 12(b)(6).  For the reasons set out below,
Defendants' motion is granted.

## I.    Background

The following facts are drawn from the amended
complaint, and they are presumed true for the purposes of this
motion.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).[1]

On the night of May 9, 2022, Migdalia Ortega's
boyfriend shot her in an apartment in Queens.  Am. Compl.
¶¶ 18-19, ECF No. 18.  Defendants "were informed by 911 calls
and / or individuals at the scene" that Ortega had been shot,
was "critically injured," and required "life-saving medical
care."  *Id.* at ¶ 23.  Upon arrival, Defendants "seized control
and / or custody" of the apartment and began searching for
gunshot victims.  *Id.* at ¶¶ 20-22.

Defendants "unreasonabl[y] delayed in ascertaining
[Ortega's] location [within the apartment]," and therefore did
not treat her promptly.  *Id.* at ¶ 24.  Ortega died at Elmhurst
Hospital Center from her wounds — wounds that allegedly would

---

[1] Unless otherwise noted, when quoting judicial decisions this order
accepts all alterations and omits all citations, footnotes, and internal
quotation marks.

have been "survivable if timely medical care [had been] rendered."  *Id.* at ¶ 25.

## II.    Legal Standard

To survive a motion under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, the requirement to accept a complaint's allegations as true "is inapplicable to legal conclusions."  *Id.*  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice."  *Id.*

## III.    Discussion

### A.    Federal Section 1983 Claims (Count III)

#### 1.    Fourth Amendment

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  The complaint alleges that Defendants violated Ortega's Fourth Amendment rights when they entered the apartment without a warrant and "seized control" of the premises.  Am. Compl. ¶ 21.

The complaint does not allege an unreasonable search or seizure.  To be reasonable under the Fourth Amendment, "a search of a home must either be conducted pursuant to a warrant

3

or meet an exception to the warrant requirement." *Anthony v. City of N.Y.*, 339 F.3d 129, 135 (2d Cir. 2003). One such exception is the emergency aid exception, which permits an officer to "enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance." *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998). To determine if the exception applies, "the core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer to believe that there was an urgent need to render aid or take action." *United States v. Simmons*, 661 F.3d 151, 157 (2d Cir. 2011). The plaintiff has the burden to establish the exception's applicability, though this is not dispositive here.[2]

The complaint, on its face, alleges facts supporting application of the emergency aid exception. *See Hausch v. Ecklond*, 604 F. App'x 59, 60 (2d Cir. 2015) (summary order) (affirming district court's dismissal of Fourth Amendment claim

---

[2] The Second Circuit held, in *Ruggerio v. Krzeminski*, that a civil plaintiff asserting a Fourth Amendment violation bears the burden of showing that no exception to the warrant requirement applies. 928 F.2d 558, 563 (2d Cir. 1991). The circuits are split on this question and, as Judge Weinstein noted relatively recently, the Second Circuit has not consistently assigned the burden for every warrant exception. *See Thompson v. Clark*, 364 F. Supp. 3d 178, 191-92 (E.D.N.Y. 2019). In any event, the burden will not be dispositive where, as here, the complaint alleges facts clearly supporting the exception's application. *See Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 382-83 (S.D.N.Y. 2013), *vacated in part, Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 106-110 (2d Cir. 2020).

after finding that complaint and public record supported

invocation of "special needs" exception); *Chamberlain*, 986 F.

Supp. 2d at 382-83  (dismissing Fourth Amendment claim because

"facts as alleged by Plaintiff ma[de] clear that the officers'

entrance into the apartment" fell under the emergency aid

exception).  According to the complaint, Defendants entered the

apartment after 911 callers and individuals at the scene

informed them that Ortega "was critically injured within [the

apartment] and in desperate need of life-saving medical care."

Am. Compl. ¶ 21-23.  So, even read in the light most favorable

to Felix, the complaint alleges facts that would lead a

"reasonable" and "experienced" officer to conclude that Ortega

required emergency assistance.  Felix thus has not plausibly

alleged that Defendants' entry into the apartment violated the

Fourth Amendment.

The complaint also does not allege an unreasonable

search or seizure of Ortega herself.  Indeed, it alleges only

that Defendants "seiz[ed] control" of the *apartment*, not of

Ortega's person.  *Id.* at ¶ 21.  Felix argues that if Defendants

seized control of the apartment, then it is reasonable to infer

that they also seized Ortega.  Pl.'s Opp'n Mem. 4, ECF No. 25

("[Ortega] was effectively seized during the course of the

criminal investigation into the shooting . . . [via] the seizure

of the premises in which [she] was trapped").  This does not

follow.  Generally, the government "seizes" a person under the Fourth Amendment when "a reasonable person would [not] feel free to decline the officers' requests or otherwise terminate the encounter."  *Florida v. Bostick*, 501 U.S. 429, 436 (1991).  The complaint never alleges facts suggesting that Ortega reasonably felt — by virtue of Defendants' conduct, rather than her own injuries — that she could not leave the apartment.  *See Bostick*, 501 U.S. at 436 (seizure analysis does not consider whether person's freedom of movement was "restricted by a factor independent of police conduct"); *see also Michigan v. Chesternut*, 486 U.S. 567, 576 (1988) (Scalia, J., concurring) ("A Fourth Amendment seizure occurs when an individual remains in the control of law enforcement officials because he reasonably believes, on the basis of their conduct toward him, that he is not free to go.").  Thus, the complaint does not allege a cognizable seizure of Ortega's person.

2.    Fourteenth Amendment (Due Process)

Felix also brings a claim under the Due Process Clause of the Fourteenth Amendment.  Specifically, she alleges that by "unreasonably delay[ing]" treatment of Ortega's wounds, Defendants violated her due process rights.  Am. Compl. ¶¶ 24,

34.  We construe this as a substantive, not procedural, due process claim.[3]

The complaint does not state a viable due process claim under the Fourteenth Amendment.  "[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."  *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989).  And even assuming, *arguendo*, that Defendants negligently treated Ortega's wounds, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

Felix argues that state officials can be liable for damages under the Due Process Clause when they are deliberately indifferent to the medical needs of a pretrial detainee.  Pl.'s Opp'n Mem. 6; *see generally Maldonado v. Town of Greenburgh*, 460

---

[3] The complaint alleges a violation of Ortega's "due process rights," without further specificity.  Am. Compl. ¶ 34.  "Due process has both a procedural and substantive component."  *Mason v. Vill. of Babylon*, 124 F. Supp. 2d 807, 814 (E.D.N.Y. 2000).  Procedural due process concerns whether the plaintiff was afforded "appropriate notice and an opportunity be heard," while substantive due process "circumscribes an outer limit on permissible governmental action."  *Id.*  But the complaint never alleges a particular process that Ortega should have received.  Moreover, in her briefing, Felix argues that she has stated a claim for deliberate medical indifference, Pl.'s Opp'n Mem. 5-6, which sounds in substantive due process, *see Charles v. Orange Cnty.*, 925 F.3d 73, 85-86 (2d Cir. 2019).

F. Supp. 3d 382, 395 (S.D.N.Y. 2020) (outlining the standard for such claims).  But Ortega was not a pretrial detainee.  As noted above, Ortega had not been "seized" within the meaning of the Fourth Amendment, *supra* at Part III.A.1, let alone incarcerated (or otherwise detained) ahead of trial.  Thus, Felix's substantive due process claim also lacks merit.

3.    Fourteenth Amendment (Equal Protection)

The complaint states, in passing, that Defendants' conduct violated Ortega's rights under the Equal Protection Clause of the Fourteenth Amendment.  Am. Compl. ¶ 34.  Because the complaint does not allege Ortega's membership in a particular class or group, the Court construes this as a "class of one" claim.  *See Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (defining "class of one" claims).

A "class of one" equal protection claim requires a plaintiff to show that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Id.*  Here, the complaint does not allege the existence of any "similarly situated" comparator to Ortega.  Accordingly, the complaint does not state a viable "class of one" claim under the Equal Protection Clause.

4.    Eighth Amendment

The complaint goes on to allege (again in passing) that Defendants' conduct violated the Eighth Amendment's ban on cruel and unusual punishment.  Am. Compl. ¶ 34.  The Eighth Amendment's protections only apply to convicted prisoners. *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977); *see also Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  Ortega was not a convicted prisoner.  So, Felix cannot bring an Eighth Amendment claim here.[4]

5.    *Monell* Claim

Felix also alleges that the City is liable for the above-discussed alleged constitutional violations of its employees.  Am. Compl. ¶ 35.  To establish municipal liability for the allegedly unconstitutional acts of city employees under 42 U.S.C. § 1983, a plaintiff must show that the "action alleged to be unconstitutional implements or executes" official municipal policy, or that it stems from a "governmental custom even though such a custom has not received formal approval through the [municipality's] official decisionmaking channels."

---

[4] Felix's invocation of the Eighth Amendment may relate to her deliberate medical indifference claim under the Fourteenth Amendment.  When state officials are deliberately indifferent to the medical needs of convicted prisoners, their actions violate the Eighth Amendment as incorporated against the states by the Fourteenth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 101 (1976).  But Felix claims — inaccurately — that Ortega was a pretrial detainee, not a convicted prisoner.  Pl.'s Opp'n Mem. 6.  And claims of deliberate medical indifference against pretrial detainees "are governed by the Due Process Clause of the Fourteenth Amendment," not by the Eighth Amendment. *Darnell*, 849 F.3d at 29.

*Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978).

There can be no *Monell* liability "[u]nless a plaintiff shows that [she] has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). Because Felix has failed to plausibly allege that Defendants violated Ortega's legal rights, her *Monell* claims against the City must fail.

But even if Felix had adequately alleged an individual employee's violation, she still has not plausibly alleged that the challenged conduct stemmed from official City policy or unofficial City custom. The complaint offers little more than the conclusory assertion that the City inadequately trained and monitored its employees. Am. Compl. ¶ 35. It alleges no facts buttressing this conclusion. These kinds of "threadbare" conclusions are not enough to pass muster under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678; *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). Accordingly, Felix's claims against the City must be dismissed.

**B.    State Law Claims (Counts I, II, and IV)**

Because there are no federal claims remaining, the Court will decline supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). Indeed, this is the

10

"usual" course when all federal claims have been dismissed at the pleading stage.  *See Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013).  These claims are dismissed without prejudice.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n.7 (1988).

## IV.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss the federal claims is granted in full.  The Court declines supplemental jurisdiction over the state-law claims.  The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:    March 10, 2025
          Brooklyn, New York